PECK, J.,
delivered the opinion of the court:
Samuel P. Brady, a citizen of Detroit, in the State of Michigan, represents that at various times in the autumn of the year 1861 he sold and delivered for the use of the army of the United States, at the city of St. Louis, a large quantity of clothing and other supplies. That the prices charged for the articles so sold by him, did not exceed the market value of the same at the time and place of the sale and purchase. That when these goods were purchased by the agents of the United States there was an immediate necessity therefor, for the purpose of equipping and supplying the troops then being organized and sent to the field; consequently there was do public advertisement asking proposals for the sale of the same. That the articles sold by claimant were purchased by officers authorized to make the purchases, and that vouchers were given by them to the claimant for the articles sold by him, and that the transactions between himself and the agents of the defendant were in good faith and without fraud or circumvention.
The claimant also states that his vouchers were not promptly paid; and that they were afterwards acted upon by the Holt, Davis and Campbell commission, which commission made several deductions therefrom. Claimant insists that the deduction from his vouchers, made by the commission aforesaid, was wholly unauthorized.
In reference to the action of the Holt, Davis and Campbell commission upon his vouchers, the claimant makes the following recitals:
“Petitioner further states that he protested against the action of said commission, both before and after the investigation and action thereon by said commission, and especially did he protest against the said reduction thereof.
“Petitioner further states that the said commission also required petitioner to sign a receipt for the sums so expressed in the awards of said commission, to he in full of said vouchers so presented to and filed in the said commission, and refused to allow petitioner anything thereon except upon his signing such receipts; that being harassed and unable longer to remain without the money, except at a ruinous sacrifice, your petitioner signed such receipts, protesting and insisting at the same time that he was justly entitled to the qntire amount of said vouchers; that the said vouchers were properly given, and that the action of said commission was arbitrary and without authority of law in thus compelling petitioner, without any consideration whatever, to sign a receipt in full of a claim upon receipt of only a portion of *206 the money expressed therein, and which claim had been adjusted by competent authority.
“Petitioner states that he then and there contended and insisted that, notwithstanding the language of such receipt, the receipt was not a receipt in full; and he now insists that such receipt was not a receipt for more money than he actually received, and that he never consented to, nor was there any consideration for, any deduction from the amount of such vouchers so given him by said quartermasters, and that the issuing of such vouchers by said quartermasters fixed the amount of the liability of the United States, on account of the purchase of said articles, and that the said accounts of petitioner were thus settled and adjusted.
“ Wherefore petitioner states that the United States is justly indebted to him for the amount of such vouchers so unpaid as aforesaid, amounting to the sum of $14,200 94, which last amount nor any part thereof has been paid to petitioner, and which sum he now claims from the United States.”
The goods purchased of claimant, for which the vouchers were given, were all suitable and necessary for the use of the army, and they were so applied; vouchers were given to claimant for the goods sold by him, part of which are signed by W. Gr. Rankin, captain 13th infantry, and acting assistant quartermaster, and a part are signed by J. McKinstry, brigadier general and quartermaster. No exception is taken to the form of the vouchers, nor is it alleged that the officers who gave them were not authorized.
Some of the vouchers had been assigned by claimant, but upon what terms or conditions as to risk or value is not shown. When the commission acted upon the assigned vouchers they were recognized by it as valid in favor of the assignees to the full amount of each, but a deduction was made from a voucher not assigned for the sum of $14,742 94, covering the total of deductions, which the commissioners assume they would have made from the several vouchers had they not been assigned.-
The following indorsement is made upon several of the assigned vouchers in red ink :
“ Allowed $-, being the full amount to the assignee thereof, the deduction made therefrom having been taken from other claims of said S. P. Brady.
JD. Davis, Chairman of Commission.”
The commissioners thus taking upon themselves the right to interpret *207 the law of assignments, and adjudicating, apparently, without-request and without proof, all the rights and equities of the parties. This was an exercise of power by the commissioners which does not appear to-have been conferred by the Secretary of War. Had the power been conferred expressly, it will not be disputed that it was without validity. Deciding as to the negotiability of these vouchers, and a settlement of' the terms and conditions upon which they were transferred, might seriously affect the rights of parties and dispose of many questions, which, we think, were beyond the scope and authority of those commissioners to adjudicate. Those were questions in which the government had not any interest.
To show the action of the commissioners in relation to unassigned, vouchers we give this certificate from the record :
“ Original voucher No. 1 of claim 103.”
Indorsed in red ink :
“ $14,742 7S. — Allowed upon this voucher fourteen thousand seven, .hundred andforty-two 75-100 dollars. The sum of $11,523 85 being the aggregate amount of deduction ordered upon this voucher and ofi-reclamations upon other claims of said S. P. Brady, subject to similar-deductions, but which, being held by bona fide assignees, have been, allowed in full.
“D. Davis,
“ Chairman of Commission.
-‘Attest:
“ J. S. Fullerton,

“Secretary.”

Claimant denied the right of the commissioners to interfere between, himself and his assignees by making reclamations or otherwise, insisting that the deductions from Ms vouchers were unauthorized, and protesting against their action, rulings, and exactions in the premises y-he submitted because he could not resist, all the time declaring, he would assert his rights at the first opportunity. We think he is not, bound by anything the commissioners assumed to do for him or withheld from him.
The goods for which'the vouchers were given were purchased in open market, under an exigency which McKinstry relates in his testimony, as follows:
“ These goods were purchased under a regulation of the quartermasters’ department, to purchase in the open market when the exigencies of the service prevented advertising for bids. These exigencies were created by the fact that a large volunteer force in the northwest *208 ern States were daily arriving at St. Louis without any notice to me or the commanding general, and their wants and necessities, such as ■tents, cooking utensils, clothing, and blankets, were immediate and pressing, giving me, in many instances, only a few hours to comply with them, awaiting which they were compelled to remain in the streets without shelter. I made every effort, through the commanding general of the proper department at Washington, to he notified of the probable number of men I was to supply, and the expected time of their arrival at St. Louis, as my correspondence with the department will show. I did this to avoid the exigency of purchasing in open market. In addition to which I made my estimates and requisitions upon the quartermasters’ department at Washington city for the proper supplies, and was officially informed of their inability to comply with them, and ordered and instructed to take my own measures to meet the demands of my position, having reference, of course, to the economy of disbursement. Under the foregoing circumstances I purchased goods of Mr. Brady, and authorized Mr. Bankin to do the same — only, however, when in immediate want of them.”
The goods for which the vouchers were given were all applied and used by the United States, and accounted for by McKinstry in his returns to the proper department. It is not objected that the vouchers were not in the usual form, nor is it shown that the price agreed to be paid for the articles stated in them was above the market price. The testimony in the case is all the other way. These facts would raise an obligation on the part of the United States to pay the vouchers.
The action of the Holt, Davis, and Campbell commission in relation to vouchers like those under consideration has been so often discussed, and the effect of the receipts purporting to be given in full by their respective owners has been so frequently commented upon, that a repetition of them is needless.
This claimant shows himself to be within the principles already recognized by the court in similar cases; no reason being presented to distinguish this case from the others of like character, he should recover a judgment.
It is therefore ordered that he recovera judgment for the sum withheld, which is $14,200 94.